UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RHONDA BOLDEN,

                            Plaintiff,

              -against-

WESTCHESTER COUNTY NEW YORK
BOARD OF ETHICS, ET AL.,

                            Defendants.

22-CV-10555 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), initiated this action by filing a 2,500-page complaint that did not name a defendant. By order dated January 17, 2023, the Court directed Plaintiff to file an amended complaint. On March 18, 2023, Plaintiff filed an amended complaint, and the Court has reviewed it. For the reasons set forth below, the Court dismisses the amended complaint, but grants Plaintiff 60 days' leave to replead certain claims in a second amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff presents the claims in the amended complaint using a copy of this court's general complaint form (ECF 11) and a 30-page typed complaint (ECF 11-1). Plaintiff also includes in her submission copies of documents from the New York State Office of Children and Family Services ("OCFS") and Westchester County Child Protective Services ("CPS") investigation of her and excerpts from a "New York State Child Protective Services Manual." Named as Defendants are the New York State "Office of Children and Family Services Department of Social Services," which the Court understands to be OCFS; Westchester County; "Westchester County NY Local Child Protective Services Agency," which the Court understands to be CPS;

the "NY State Central Register," which the Court understands to be the Statewide Central Register of Child Abuse and Maltreatment ("SCR"); "Westchester County NY Local Family Court"; "Westchester County Law Department County Attorney Office"; "Westchester County Board of Ethics White Plains City Hall"; former OCFS Commissioner Sheila J. Poole; "Acting PCFS Commissioner & Executive Deputy Commissioner"; Westchester County Attorney Noreen Rothman;[1] Westchester County Department of Social Services ("DSS") Director of Child Welfare Nancy Sigler; Westchester County DSS Manager of Child Welfare Jill Seelig; CPS Supervisor Carmen Soria; CPS Investigator Elizabeth Vicchio; SCR Director Kristen Gleeson; Westchester County Family Court Judge Michelle I. Schauer; and Westchester County Executive George Latimer.

Plaintiff's amended complaint is repetitive, and her allegations are often presented out of sequence. The Court is able to glean the following allegations primarily from the amended complaint form and typewritten amended complaint.[2] On November 22, 2016, an unidentified source reported claims of neglect against Plaintiff, and that report was added to the SCR. (ECF 11-1, at 7, 12.) The SCR then transmitted that claim to Westchester County CPS to investigate. (*Id.* at 7.) Plaintiff maintains that the allegations against her were false. (*Id.*)

---

[1] Plaintiff identifies this defendant in the amended complaint as "Doreen Rothman," but she submitted a letter on March 18, 2023, clarifying that the defendant's name is "Noreen Rothman." (*See* ECF 12.)

[2] Most, if not all, of Plaintiff's allegations are repeated multiple times throughout the amended complaint. For simplicity, the Court generally provides citations only to a single recitation of a particular allegation unless otherwise indicated and necessary for context or completeness.

In late November 2016, CPS offered Plaintiff an opportunity to voluntarily participate in the agency's Family Assessment Response ("FAR") program.[3] (*Id.* at 12.) Plaintiff requested "reasonable accommodations per the Rehabilitation Act and per the ADA," but her request was ignored. (*Id.*) Plaintiff was told that if she did not participate in the FAR program, "a [CPS] criminal investigation would ensue." (*Id.* at 8; *see id.* at 12.) Plaintiff was told by CPS investigators that she "would receive a notice in the latter part of November 2016 that the [CPS] safety assessment . . . was satisfactory and the [CPS] inquiry and assessments based on the reported allegation were to be closed and that no further [CPS] actions would be taken." (*Id.* at 8.) "Days later," however, CPS investigators came to Plaintiff's house and stated that she must either participate in the FAR program or face a CPS investigation. (*Id.*) Plaintiff did not receive notice stating "that the FAR program ended" or notice informing her that a CPS "criminal investigation" began in December 2016. (*Id.*) She alleges that her participation in FAR was terminated and the investigation was begun because the agency "deemed [her] uncooperative . . . when [she] began requesting to know [her] parental rights." (*Id.* at 11; *see id.* at 17) She states the "[CPS] agency" then "called in a new report to the Ny state register to begin an investigation." (*Id.* at 17.)

On December 14, 2016, after the case turned into an investigation, Westchester County Attorney Rothman, CPS supervisor Soria, and CPD investigator Vicchio petitioned Westchester Family Court Judge Schauer "to attain a [w]arrant to gain access to [Plaintiff's] home and to gain access to [Plaintiff's] children." (*Id.* at 10; *see id.* at 12, 29) Plaintiff asserts that the warrant was

---

[3] Plaintiff, quoting New York Social Services Law § 427-a, describes FAR as "an alternative means of addressing certain matters otherwise investigated as allegations of child abuse of maltreatment." (*Id.* at 11.)

issued "without probable cause by knowingly making false statements to the court." (*Id.* at 10.) The social workers then "invaded [Plaintiff's] home and traumatized [her] family." (*Id.* at 18.)

Plaintiff further alleges that she was "denied the opportunity to receive disability person specific and case specific accommodations." (*Id.* at 9.) Plaintiff explained that she "ha[s] disabilities" and, as accommodations, she requested "that the agency stop calling [her] excessively and to stop making unannounced visits to our home because it is interfering with our religious spiritual beliefs, practices and intercession which helps [Plaintiff] and [her] children cope." (*Id.* at 11.)

On March 3, 2017, OCFS "convicted [Plaintiff] of a reprehensible crime of Educational Neglect." (*Id.* at 7.) The Court understands Plaintiff to be alleging that a report of educational neglect against her was listed as "indicated" on the SCR. Plaintiff maintains that she never received notice that the report against her was indicated and she was never informed that she had a right to request a hearing with the Bureau of Special Hearings within 90 days of receipt of the notice of indication. (*Id.* at 9, 29.)

Plaintiff was unaware that the report against her had been listed as indicated on the OCR until "the latter part of 2021."[4] (*Id.* at 26; *see id.* at 9, 29) (stating that the indicated report "was concealed from [Plaintiff] for four years"). Once Plaintiff discovered the indicated report, she sent three certified letters requesting her case records and requesting a hearing. The SCR denied Plaintiff's request for a hearing twice on the grounds that she did not request the hearing within 90 days of receipt of the notice of indication (which Plaintiff alleges she never received).

---

[4] Plaintiff alleges, without additional explanation, that the SCR "sent every notice stating that the [CPS] cases were deemed unfounded to every address other than our sole mailing address which [Plaintiff] acquired as of November 1, 2017, to date." (*Id.* at 27.)

Plaintiff's third attempt to request a hearing was successful and a hearing before the OFCS's Bureau of Special Hearings was scheduled for January 3, 2022. (*Id.* at 9-10, 26.)

On December 30, 2021, during a prehearing conference in preparation for a scheduled hearing before the Bureau of Special Hearings, the indicated finding was "proven false and overturned." (*Id.* at 7, 9.) A December 30, 2021, letter from the Westchester County Attorney's Office, which Plaintiff attaches to the amended complaint, states that while CPS "is confident that the determination is supported by some credible evidence, after a review of the record, it has been decided that the evidence will not support a finding by a fair preponderance of the evidence." (ECF 11-3, at 1.) CPS therefore consented to the relief sought by Plaintiff "whereby the determination be amended to 'unfounded' and the SCR report by legally sealed pursuant to statute." (*Id.*)

Plaintiff alleges that she is an "educational advocate" and that she assists "children and families [to] receive the support and services during their educational trajectory." (ECF 11-1, at 26; *see id.* at 29.) She maintains that Defendants' actions "prevent[ed her] from continuing [her] profession as an educational advocate" and that the "conviction" has "tainted and blemished [her] character and integrity." (*Id.* at 25.) The presence of the indicated report on the SCR "has and is denying [her] and extremely hindering [her] ability to gain gainful employment in education working with children and families." (*Id.*; *see also id.* at 29.)

Plaintiff asserts that if she had been notified of the indicated report in 2017, she would have requested an administrative hearing and, if necessary, sought further review in the state court. (*See id.* at 25.)

Plaintiff seeks "Relief/Emergency Relief due to the continuing Human Suffering and the exacerbation of [her] impairments." (*Id.* at 30.) On the amended complaint form, Plaintiff asks

for "Emergency Relief, Injunctive + Declaratory Relief[,] Money damages to prevent this from

happening to other parents + children. For the Agency to receive training + For the officials that

have violated every right a human being is entitled to be punished + Any + All relief the Court

deems necessary." (ECF 11, at 5.)

## DISCUSSION

The Court construes the amended complaint as asserting constitutional claims under 42

U.S.C. § 1983 for (1) violations of Plaintiff's right to procedural due process, and (2) violations

of her rights under the Fourth Amendment; and (3) violations of her rights under the Americans

with Disabilities Act of 1990 and the Rehabilitation Act. Before proceeding to her substantive

claims, the Court will address Plaintiff's naming of improper defendants and seeking of improper

relief.

### A.    Improper Defendants

1.    Municipal agencies

Plaintiff's claims against the Westchester County CPS, Westchester County "Law

Department County Attorney Office," and Westchester County Board of Ethics must be

dismissed because municipal agencies or departments do not have the capacity to be sued under

New York law. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552

(S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City

of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments

which are merely administrative arms of a municipality do not have a legal identity separate and

apart from the municipality and cannot sue or be sued."); *see also* N.Y. Gen. Mun. Law § 2 ("The

term 'municipal corporation,' as used in this chapter, includes only a county, town, city and

village."). The Court therefore dismisses Plaintiff's Section 1983 claims against these defendants

for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In light of Plaintiff's *pro se* status, the Court will construe her allegations against these municipal entities as being asserted against Westchester County, which she also names as a Defendant. Those claims are addressed below.

2.      Eleventh Amendment immunity

Plaintiff's Section 1983 claims for damages against the Westchester County Family Court, OFCS, and the SCR must also be dismissed. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009).  "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). New York Family Courts, including the Westchester County Family Court, and the OCFS, which is the state agency that maintains the SCR, are arms of the State of New York and enjoy Eleventh Amendment immunity. *See Gollomp*, 568 F.3d at 368 (the New York state court system enjoys Eleventh Amendment immunity); *Estate of M.D. v. New York*, 241 F. Supp. 3d 413, 421-22 (S.D.N.Y. 2017) (OCFS enjoys same*); Murray v. Thompson*, No. 17-CV-7004 (VB), 2018 WL 5113955, at *4 (S.D.N.Y. Oct. 19, 2018) (a New York Family Court enjoys same). Plaintiff's Section 1983 claims against these defendants are therefore barred by the Eleventh Amendment and are dismissed.

3.      Judicial immunity

The Court must also dismiss Plaintiff's Section 1983 claims against Family Court Judge Michelle I. Schauer. Judges are absolutely immune from suit for damages for any actions taken

within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Generally, "acts arising out of, or related to, individual cases before the judge are considered

judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad

faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because,

"[w]ithout insulation from liability, judges would be subject to harassment and

intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as

amended in 1996, provides that "in any action brought against a judicial officer for an act or

omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial

capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of

jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions

that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly

where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Plaintiff fails to allege any facts showing that Judge Schauer acted beyond the scope of

her judicial responsibilities or outside her jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because

Plaintiff sues Judge Schauer for "acts arising out of, or related to, individual cases before [her],"

she is immune from suit for such claims. *Bliven*, 579 F.3d at 210. The Court therefore dismisses

Plaintiff's claims against Judge Schauer because they seek monetary relief against a defendant

who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous,

28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim

dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the in forma

pauperis statute].").

### B.     Personal Involvement

Plaintiff sues former OCFS Commissioner Sheila Poole, Westchester County DSS

Managers Nancy Sigler and Jill Seelig, SCR Director Kristen Gleeson, and Westchester County

Executive George Latimer in their individual capacities and seeks damages. To state a claim

under Section 1983, a plaintiff must allege facts showing the defendants' direct and personal

involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr.*

*Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal

involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award

of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held

liable under Section 1983 solely because that defendant employs or supervises a person who

violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government

officials may not be held liable for the unconstitutional conduct of their subordinates under a

theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff

must plead and prove the elements of the underlying constitutional violation directly against the

official . . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not allege any facts showing how Poole, Sigler, Seelig, Gleeson, or Latimer

were personally involved in the events underlying her claims. Plaintiff's claims are therefore

dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C.

§ 1915(e)(2)(B)(ii).

### C.     Municipal Liability

Plaintiff brings Section 1983 claims against Westchester County and county agencies,

which the Court construes as asserted against the County. When a plaintiff sues a municipality

under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's

employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality

itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff describes her own individual experience with the Westchester County and New York State child protection systems, but she does not allege any facts suggesting that Westchester County has a policy, practice, or custom that caused a violation of her constitutional rights. The Court therefore dismisses Plaintiff's Section 1983 claims against Westchester County for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). As discussed below, the Court grants Plaintiff leave to replead certain of her claims. If Plaintiff believes she can allege facts suggesting that she has a basis for a municipal liability claim against Westchester County, she may replead those claims in a second amended complaint.

## D.     Injunctive Relief

While the Eleventh Amendment bars claims for money damages against state actors in their official capacity, it does not preclude suits against state officers in their official capacity seeking prospective injunctive relief. *See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985). Under *Ex parte Young*, acts of state officers that violate federal constitutional rights are deemed not to be acts of the State and may be the subject

of injunctive or declaratory relief in federal court. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Whether a plaintiff's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a state is a "straightforward inquiry" that asks "'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Here, Plaintiff could be attempting to assert claims for injunctive relief against Poole, Sigler, and Gleeson. Plaintiff, however, does not allege "an ongoing violation of federal law or seek[] relief properly characterized as prospective." *Id.* Plaintiff's allegations, construed liberally, suggest that she never received notification that the neglect claim against her was listed as indicated on the CSR in 2017. The complaint also states, however, that in 2021, after Plaintiff requested a hearing, the indicated report was amended to be "unfounded" and the report was sealed. (*See* ECF 11-3, at 1.) Any potential violation of federal law that Plaintiff is asserting ended when the report was amended and sealed in 2021, and is therefore not ongoing. Moreover, it is unclear how the injunctive relief requested by Plaintiff – additional training for CPS employees – would remedy any violation she experienced. The Court therefore dismisses any claims for prospective injunctive relief that Plaintiff may be asserting under the *Ex parte Young* exception to Eleventh Amendment immunity.

**E.   Procedural Due Process**

1.   Statutory framework

The gravamen of Plaintiff's amended complaint appears to be a due process claim arising from the inclusion of the indicated report against her in the SCR and the alleged failure of CPS to notify her that the report was indicated so that Plaintiff could challenge that finding. Before

proceeding to the substance of Plaintiff's claim, the Court will provide some general background

on the SCR and the role of OFCS and CPS in relation to it.

> The purpose of the SCR is to have, in one central location, the names of all known
> subjects of indicated reports of child abuse and maltreatment in New York State
> so that the information may be used when needed to conduct appropriate
> investigations and database checks, either for the protection of children named in
> those reports or other children who might come into contact with the subject of
> the report.

*Finch v. Office of Children & Family Servs.*, 499 F. Supp. 2d 521, 526 (S.D.N.Y. 2007)

(footnotes omitted). When the allegations reported in such telephone calls "could reasonably

constitute a report of child abuse or maltreatment," the allegations are transmitted by the SCR to

the local CPS for investigation. *Id.*

The CPS investigates the allegations to determine whether a report of maltreatment is

"indicated" or "unfounded." *See* N.Y. Soc. Serv. Law § 424(7). A report is "indicated" if an

investigation determines that there is some credible evidence of the alleged abuse or

maltreatment. *Id.* § 412(7)(i).[5] A report is "unfounded" if an investigation determines that there is

no credible evidence of alleged maltreatment. *Id.* § 412(6)(i).[6] If the CPS determines that the

report is indicated, the CPS notifies the subject that the report was indicated and that the subject

of the report has the right to request that the report be amended or expunged.[7] 18 N.Y.C.R.R.

§ 432.3(k)(1). A subject of an indicated report may request that OCFA amend the record of a

---

[5] For investigations, such as Plaintiff's investigation, that were commenced on or before
December 31, 2021, the "some credible evidence" standard applies. *Id.* § 412(7)(i). For
investigations commenced on or after January 1, 2022, a "fair preponderance of the evidence"
standard applies. *Id.* § 412(7)(ii).

[6] For investigations commenced on or after January 1, 2022, the "fair preponderance of
the evidence standard" applies. *Id.* § 412(6)(ii).

[7] If the report is unfounded, the SCR notifies the subject that the report was unfounded
and has been sealed. 18 N.Y.C.R.R. § 432.9(b).

report within 90 days after receiving notice that the report was indicated. N.Y. Soc. Serv. § 422(8)(a)(i). If this administrative review determines that there is a fair preponderance of evidence in the record to prove that the subject committed the acts of abuse or maltreatment and that such acts could be relevant and reasonably related to certain employment by the subject, OCFS will notify the subject of the report and forward the report to OCFS's Bureau of Special Hearings for a hearing before an administrative law judge. *Id.* § 422(8)(a)(v).

Under the Social Services Law, certain agencies are required to request a search of the SCR database for indicated reports before employing, certifying, or licensing persons in fields having substantial contact with children, such as childcare. *See* N.Y. Soc. Serv. Law § 424-a.

2.   Plaintiff's claims

The crux of Plaintiff's due process claim is that she never received notification in March 2017 that the educational neglect report was determined by OFCS to be indicated, and was therefore denied her opportunity to challenge the designation through the administration review process. It was not until she learned of the indicated report, three years later, that she was able to avail herself of the administrative process to successfully challenge the designation.

The two threshold questions in any Section 1983 claim for denial of procedural due process are "whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995); *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) ("A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest . . . and (2) deprivation of that interest without due process.")

Plaintiff argues that the listing of an indicated report against her on the SCR stigmatized her as a child abuser and deprived her of her ability to seek employment. Although "damage to

14

one's reputation is not by itself sufficient to invoke the procedural protection of the Due Process

Clause," a plaintiff can demonstrate infringement of a protected liberty interest by showing that

inclusion of her name on the SCR resulted in "stigma plus." *Valmonte v. Bane*, 18 F.3d 992, 999,

1000-02 (2d Cir. 1994) (citation and internal quotation marks omitted). To constitute "stigma

plus," the "'stigma' resulting from the defamatory character of the posting" must be combined

with an alteration in an individual's legal status. *Paul v. Davis*, 424 U.S. 693, 708-09 (1976); *see*

*McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 3-4 (2d Cir. 2013) (table); *Kalderon v.*

*Finkelstein,* 495 F. App'x 103, 107 (2d Cir. 2012) ("In order to state a claim for deprivation of an

intangible legal right to one's reputation, commonly known as a 'stigma plus' claim, a plaintiff

must allege facts showing both '(1) the utterance of a statement about her that is injurious to her

reputation, that is capable of being proved false, and that . . . she claims is false, and (2) some

tangible and material state-imposed burden ... in addition to the stigmatizing statement.'"

(alterations in original) (quoting *Velez v. Levy,* 401 F.3d 75, 87 (2d Cir. 2005))

     The Court of Appeals for the Second Circuit has held that a plaintiff was subjected to

"stigma plus" where the SCR did not simply defame her, but also "place[d] a tangible burden on

her employment prospects." *Valmonte*, 18 F.3d at 1001. In *Valmonte*, the court found that, under

the statutory scheme then in effect, certain employers were required to consult the SCR before

hiring prospective employees, and concluded that therefore, "by *operation of law*, [the

plaintiff's] potential employers [would] be informed specifically about her inclusion on the

[SCR] and [would] therefore choose not to hire her." *Id.* (emphasis in original).

     While a plaintiff need not allege that they actually applied for and were denied

employment due to a listing on the SCR, a plaintiff must plead, at least, that they *would have*

sought a job involving children or to foster or adopt a child *but for* their inclusion on the SCR.

*See, e.g., McCaul,* 514 F. App'x at 3-4 (dismissing stigma plus substantive due process claim for failure to allege a tangible burden to satisfy the "plus" element where the plaintiff claimed her listing on the SCR impeded her ability to pursue a career around children and senior citizens, to become a foster parent and to adopt a child, but failed to allege that she had sought or would have sought a job involving children and senior citizens or to foster or adopt a child but for her listing on the SCR); *Valmonte,* 18 F.3d at 999 (finding "plus" element met by allegation that plaintiff, a paraprofessional in the school system, would have looked for a position in the child care field but for her presence on the SCR); *Grullon v. Admin. for Children's Servs.*, No. 18-CV-3129 (LJL), 2021 WL 981848, at *9 (S.D.N.Y. Mar. 16, 2021) (finding plaintiff was not subject to a "tangible burden beyond loss of reputation" where he did not allege he applied for employment or would have applied but for being listed on the SCR); *Worrell v. City of New York*, No. 12-CV-6151 (MKB), 2014 WL 1224257, at *7 (E.D.N.Y. Mar. 24, 2014) (dismissing stigma plus claim where plaintiff did not allege that she applied or would have applied for employment, but for her inclusion on the SCR) *Powell v. Johnson,* No. 11-CV-1471, 2012 WL 4052261, at *4-6 (N.D.N.Y. Jan. 9, 2012) (finding that the plaintiff, about whom a report was made to the SCR, which report was investigated and found to be "unfounded," was "unlikely" to be able to assert a protectable liberty interest where plaintiff included no allegations in her complaint that her child daycare license or registration were affected by the investigation); *Yuan v. Rivera,* No. 96-CV-6628, 1998 WL 63404, at *5 (S.D.N.Y. Feb. 17, 1998) (finding that plaintiff listed in the SCR who alleged that defendants interfered with her ability to obtain employment and that she suffered the loss of employment possibilities failed to satisfy the "plus" element where she worked as an interpreter and failed to allege that she had been foreclosed from certain employment because of the information on the SCR).

Here, Plaintiff does not allege that she applied for employment with an employer required to check the SCR before hiring. Moreover, her allegations belie any claim that she would have applied for such employment but for her listing on the SCR. Plaintiff alleges that she is an "educational advocate" and that her indicated report "has and is denying [her] and extremely hindering [her] ability to gain gainful employment in education working with children and families." (ECF 11-1, at 25, 26.) The stigma of being listed as indicated "prevents job opportunities" and diminishes Plaintiff's "credibility and earning capabilities." (*Id.* at 25.) However, Plaintiff also alleges that she did not become aware of the indicated report until late 2021 and states that that the indicated finding was overturned shortly thereafter. If Plaintiff was unaware of the existence of an indicated report against her in the SCR, then she cannot plausibly allege that being listed on the SCR caused her to forego applying for employment. If Plaintiff files an amended complaint, she must allege facts suggesting that she applied for and was rejected for a job with an employer that was required to check to SCR. Alternatively, if she did not apply for a job during the time she was indicated, then she must allege facts suggesting that she would have applied or sought employment but for her listing in the SCR, and explain how she was dissuaded from seeking employment if she did not learn that the report was listed as indicated until late 2021.

Even if Plaintiff were able to allege the denial of a liberty interest, she must still allege facts suggesting that she was denied that liberty interest without due process of law. "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted). Ordinarily, due process requires a pre-deprivation hearing in order to prevent wrongful losses from occurring. *See Cleveland Bd. of Educ. v.*

*Loudermill*, 470 U.S. 532, 542-43 (1985). Where there are adequate post-deprivation procedures, however, a state may be excused from providing pre-deprivation process when exigent circumstances require that it act quickly. *See Gilbert v. Homar*, 520 U.S. 924, 930 (1997); *Barry v. Barchi*, 443 U.S. 55, 66 (1979). Furthermore, a state official's random and unauthorized act does not violate a person's right to procedural due process if a meaningful post-deprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1986); *Parratt v. Taylor*, 451 U.S. 527, 540-43 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 230-31 (1986); *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996).

Here, Plaintiff was provided with a post-deprivation remedy, although only after she discovered the report approximately three years after the alleged deprivation. The Court understands the amended complaint to be alleging that even though Plaintiff was eventually provided with a post-deprivation remedy, that remedy was inadequate because CPS did not notify Plaintiff in a timely manner that the report was indicated and that she had a right to challenge that determination.

However, "[m]erely negligent conduct does not give rise to claims under the Fourteenth Amendment." *Jabbar v. Fischer,* 683 F.3d 54, 57 (2d Cir. 2012) (citing *Daniels v. Williams,* 474 U.S. 327, 331, 333 (1986)); *see also Cnty. of Sacramento v. Lewis,* 523 U.S. 833 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." (citing *Daniels,* 474 U.S. at 328)); *Davidson v. Cannon,* 474 U.S. 344, 347 (1986) ("In *Daniels,* we held that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property."); *Daniels,* 474 U.S. at 328, 332 ("We conclude that the Due Process Clause is simply

not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property. . . . To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries old principle of due process of law."); *Wantanabe Realty Corp. v. City of New York,* 159 F. App'x 235, 237 (2d Cir.2005) ("In order to show a violation of procedural due process rights, a plaintiff must show an intent more culpable than mere negligence." (citing *Daniels,* 474 U.S. at 328)); *PiovanettiMickersen v. Nikonoff,* No. 11-CV-5006, 2011 WL 5400157, at \*2 (E.D.N.Y. Nov. 4, 2011) ("[M]erely negligent conduct causing unintended injury to life, liberty, or property is not sufficient to state a claim under the Due Process Clause of the United States Constitution." (citing *Daniels,* 474 U.S. at 333, and *Davidson,* 474 U.S. at 344)).

Plaintiff's allegations do not suggest that her failure to receive notification of the indicated report was the result of an intentional act on behalf of CPS or one of its employees. Plaintiff alleges at various points in the amended complaint that she was "denied the notice" (ECF 11-1, at 7) and that it was "never sent" to her (*id.* at 9), but she alleges few, if any, specific facts explaining the circumstances around the failure of CPS to notify her. She alleges that the CSR "sent every notice stating that the [CPS] cases were deemed unfounded to every address other than our sole mailing address which [she] acquired on November 1, 2017, to date." (*Id.* at 27.) It is unclear from the complaint what relevance, if any, this allegation – which appears to relate to the New York State SCR (not Westchester CPS) sending notices of other reports deemed unfounded to an address Plaintiff acquired after the March 2017 report – has to Plaintiff's allegation that CPS failed to send her the appropriate notice.

The Court grants Plaintiff leave to amend her due process claim to allege facts suggesting that CPS's failure to send her notice of the indicated report was the result of more than mere

negligence. Plaintiff should allege any additional facts she may have, including facts supporting

her belief that the notice was never sent. If Plaintiff is alleging that the notice was sent to the

wrong address, she should state facts indicating how she knows it was sent to the wrong address,

and any additional facts such as whether she changed addresses around the time the notice

should have been sent, and, if so, whether her mail was forwarded or whether she communicated

that address change to CPS. If OCFS or CPS explained to Plaintiff in the course of her 2021

administrative hearing why they did not send the notice or what steps they did or did not take to

ensure that she received the notice, she should also allege those facts in the second amended

complaint. In short, Plaintiff must allege facts suggesting that any failure to notify her of the

2017 indicated report was not the result of mere negligence.

To reiterate, if Plaintiff repleads her Section 1983 procedural due process claim, she must

allege facts suggesting: (1) she applied for and was rejected for a job with an employer that was

required to check to SCR, or that she would have applied or sought employment but for her

listing in the SCR, and explain how she was dissuaded from seeking employment if she did not

learn that the report was listed as indicated until late 2021; and (2) that CPS's failure to notify her

of the 2017 indicated report was the result of intentional conduct rather than negligence. Plaintiff

should name as defendants the individual CPS employee or employees responsible for denying

her right to due process. If she does not know the individual's name, she may refer to that

individual as "John Doe" or "Jane Doe" in both the caption and the body of the second amended

complaint.[8]

---

[8] The naming of John Doe defendants, however, does *not* toll the three-year statute of
limitations period governing Plaintiff's claims and Plaintiff shall be responsible for ascertaining
the true identity of any "John Doe" defendants and amending her complaint to include the
identity of any "John Doe" defendants before the statute of limitations period expires. Should

F.      **Fourth Amendment Claims**

1.      Statute of limitations

Plaintiff's allegations, construed liberally, suggest that she may be attempting to assert

Fourth Amendment claims under Section 1983 against Rothman, Sorrio, and Vicchio arising

from the December 2016 warrant issued by Judge Schauer. It appears, however, that these claims

are time-barred. The statute of limitations for Section 1983 claims is found in the "general or

residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*,

296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New

York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue

when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v.*

*Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Here, Plaintiff alleges that the "illegal warrant" was obtained and executed around

December 14, 2016, and her allegations suggest that she knew at that time of the alleged injury

forming the basis of her claim. (*See, e.g.*, ECF 11-1, at 12.) Plaintiff therefore had until

approximately December 14, 2019, to file a timely Section 1983 claim arising from these events.

She did not submit the original complaint in this action until December 13, 2022, approximately

three years after the expiration of the statute of limitations.

The doctrine of equitable tolling permits a court, "under compelling circumstances, [to]

make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S.*

*Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (citation omitted). The statute of limitations may be

equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact

---

Plaintiff seek to add a new claim or party after the statute of limitations period has expired, she
must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego

a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83. New York also

provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.,*

N.Y. C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id.* at

§ 204 (where a dispute has been submitted to arbitration but is ultimately determined to be non-

arbitrable), *id*. at § 207(3) (defendant is outside New York at the time the claim accrues), *id.* at

§ 208 (plaintiff is disabled by infancy or insanity), *id*. at § 210 (death of plaintiff or defendant).

Plaintiff does not provide any facts suggesting that the statute of limitations should be

equitably tolled in this case. Plaintiff's claims appear to be time barred, but the failure to file an

action within the limitations period is generally an affirmative defense; a plaintiff is generally not

required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir.

2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as

the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and*

*Commercial Bank of China, Ltd., 651 F.3d 280, 293 (2d Cir. 2011); see also Pino v. Ryan*, 49

F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal under 28 U.S.C. § 1915(d) on statute

of limitations grounds). Because a district court should grant notice and opportunity to be heard

before dismissing a complaint *sua sponte* on statute of limitations grounds, *Abbas*, 480 F.3d at

640, the Court grants Plaintiff leave to file a second amended complaint that pleads facts

showing that her claims are timely filed or that equitable tolling should apply to her claims.

2.    Fourth Amendment standard

The Fourth Amendment protects the rights of the people "to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home

without a warrant are presumptively unreasonable," *Payton v. New York*, 445 U.S. 573, 586

(1980), but searches and seizures conducted "pursuant to a warrant issued by a neutral magistrate [are] presumed reasonable because such warrants may issue only upon a showing of probable cause," *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007); *see also Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]"); *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991) ("[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause."). A plaintiff may overcome this presumption if she can "show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994).

Here, Plaintiff contends that Judge Schauer issued an "illegal warrant" based on false information provided by Rothman, Soria, and Vicchio in order to gain access to her home and her children. (*See, e.g.*, ECF 11-1, at 12.) Aside from her conclusory assertions that the warrant was based on "false" or "fraudulent" information, Plaintiff does not allege any facts explaining why the information was false or otherwise undermining the presumed validity of the warrant. Because the investigation was conducted pursuant to a valid warrant, it is presumed to be reasonable. Plaintiff therefore fails to state a claim that the under the Fourth Amendment.

The Court grants Plaintiff leave to amend her Fourth Amendment claim to allege facts showing that her claim is timely or that equitable tolling should apply, and to allege additional

facts to overcome the presumption that warrant was validly issued upon a showing of probable cause.

### G.       Americans with Disabilities Act and Rehabilitation Act

1.       Statute of limitations

Plaintiff's allegations also suggest that she may be attempting to assert claims that she was denied a reasonable accommodation for a disability. The Court construes these claims as arising under Title II of the Americans with Disabilities Act of 1990 ("ADA"), which applies to government programs, and Section 504 of the Rehabilitation Act.

The Court interprets Plaintiff's ADA and Rehabilitation Act claims as arising from the Westchester CPS's investigation of her, which appears to have occurred between December 2016 and the listing of the indicated report on the CSR in March 2017. (*See* ECF 11-1, at 11.)

Plaintiff's ADA and Rehabilitation Act claims appear untimely. Because the ADA and Rehabilitation Act do not contain statute of limitations provisions, courts look to analogous state law to determine the applicable limitations period. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414 (2005) ("To determine the applicable statute of limitations for a cause of action created by a federal statute, we first ask whether the statute expressly supplies a limitations period. If it does not, we generally 'borrow' the most closely analogous state limitations period."). In New York, the State's three-year personal injury statute of limitations applies to claims brought under Title II of the ADA and the Rehabilitation Act. *See* N.Y. C.P.L.R. § 214(5); *see also Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 41 (2d Cir. 2014) (applying New York's three-year statute of limitations to claims under the ADA and Rehabilitation Act); *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999) (applying New York's three-year statute of limitations to claims under the Rehabilitation Act); *Best v. Bell*, No. 13-CV-0163 (JPO), 2014 WL 1316773 at *6 (S.D.N.Y. Mar. 28, 2014)

(applying New York's three-year statute of limitations to claims under Title II and Rehabilitation Act). Under these provisions, the claims accrue when the plaintiff knew or had reasons to know of the injury giving rise to his claims. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *see also Stropkay*, 593 F. App'x at 41; *Harris,* 186 F.3d at 247.

Plaintiff asserts that she was denied reasonable accommodations for a disability in connection with a CPS investigation of her and her family that occurred between December 2016 and March 2017. Plaintiff's ADA and Rehabilitation Act claims therefore accrued at the latest in March 2017. The limitations period for Plaintiff's claims at best expired sometime in March 2020. Plaintiff did not file this complaint until December 13, 2023, well beyond the three-year limitations period.

As discussed above, the doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (quoting *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 233 (2d Cir. 2000)). The statute of limitations may be equitably tolled when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83. New York also provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.,* N.Y. C.P.L.R. §§ 204, 204(a), 207(3), 208.

Here, Plaintiff does not provide any facts suggesting that the statute of limitations should be equitably tolled. Plaintiff's claims appear to be time barred, but the failure to file an action within the limitations period is generally an affirmative defense; a plaintiff is generally not required to plead that the case is timely filed. *See Abbas,* 480 F.3d at 640. Because a district court

should grant notice and opportunity to be heard before dismissing a complaint *sua sponte* on statute of limitations grounds, *id.*, the Court grants Plaintiff leave to file an amended complaint that pleads facts showing that her ADA and Rehabilitation Act claims are timely filed or equitable tolling should apply to her claims.

2.    Applicable standards for ADA and Rehabilitation Act claims

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). While there are subtle differences between the two statues, claims under them are generally treated identically. *See Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 n.6 (2d Cir. 2002); *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").

To state a claim under Title II of the ADA or the Rehabilitation Act, the plaintiff must allege that (1) the plaintiff is a qualified individual with a disability; (2) the defendant is subject to the ADA or the Rehabilitation Act; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability. *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). To plead a failure to make a reasonable accommodation, a plaintiff must

allege that "disabled individuals lack access to a given government resource and suggest a plausible method for remedying that lack of access." *Meekins v. City of New York*, 524 F. Supp. 2d 402, 407 (S.D.N.Y. 2007). "A plausible accommodation is one 'the costs of which, facially, do not clearly exceed its benefits.'" *Id.* (quoting *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).

In the amended complaint, Plaintiff alleges that, in December 2016, investigators came to her home unannounced seeking to enter her home and talk with her children. "Thereafter," Plaintiff began to receive phone calls and additional unannounced visits from CPS. Plaintiff "explained that [she] has disabilities" and requested "reasonable accommodations." (ECF 11-1, at 11.) Specifically, Plaintiff requested that CPS "stop calling [her] excessively and to stop making unannounced visits to [her] home" because it was interfering with Plaintiff's "religious spiritual beliefs, practices and intercessions" which help her "cope" with her disabilities. (*Id.*) She maintains that her request for such accommodations was ignored. Plaintiff does not explicitly identify her disability, but she attaches a March 2016 letter from her doctor stating that she "is totally disabled due to a psychiatric illness" and that she "does not have the ability to tolerate crowds, and can not take public transportation." (ECF 11-4, at 3.)

Even if the Court assumes that Plaintiff has a disability as defined by the statute, and that the relevant defendant or defendants are covered by the statutes, it is unclear what government resource she claims she was denied, and her requested accommodation does not appear reasonable. CPS has a duty to investigate all reports of suspected child abuse and maltreatment and to follow-up with appropriate law enforcement or other state or local agencies as necessary. *See* N.Y. Soc. Serv. § 424. Plaintiff's request that CPS stop calling her and stop making unannounced visits at her home is essentially a request that CPS abandon its duty to investigate

the report of child abuse or neglect filed against Plaintiff. Plaintiff does not allege that she was

denied access to government resource, and, in any event, her requested accommodation cannot

be considered reasonable under the circumstances.

If Plaintiff chooses to replead her ADA and Rehabilitation Act claims, she must allege

facts showing that equitable tolling should apply and allege facts suggesting her claims satisfy

the pleading standards discussed above. The appropriate defendant for her ADA and

Rehabilitation Act claims would be the government entity that she alleges violated her rights.[9]

## H.    State Law Claims

Plaintiff's allegations suggest she may also be attempting to assert claims under state law,

including claims that CPS and OFCS failed to follow their own rules and regulations. A district

court may decline to exercise supplemental jurisdiction over state law claims when it "has

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally,

"when the federal-law claims have dropped out of the lawsuit in its early stages and only state-

law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-*

*Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Because it is not clear that Plaintiff can state any federal claim, the Court will determine

at a later time whether to exercise supplemental jurisdiction of any state law claims Plaintiff

seeks to raise in any second amended complaint. *See Martinez v. Simonetti*, 202 F.3d 625, 636

(2d Cir. 2000) (directing dismissal of supplemental state-law claims where no federal claims

remained). If Plaintiff fails to amend her complaint within the time allowed, leading to dismissal

---

[9] Courts have held that the ADA and the Rehabilitation Act do not provide for liability of individuals in their individual capacities. *See, e.g.*, *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (Rehabilitation Act), *petition for cert. filed*, (Nov. 1, 2022); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (Rehabilitation Act and Title II of the ADA).

of her federal claims, the Court will decline to assert supplemental jurisdiction of any claims brought under state law.

## I.       Requests for Anonymity and Accommodations

On January 6, 2023, Plaintiff submitted a letter to the Court stating that she has unspecified "severe impairments" and seeing "reasonable accommodations and modifications/adaptations within this legal proceeding to allow an equal opportunity to participate and level the playing field." (ECF 5, at 1.) Among other accommodations, Plaintiff sought "to be made apart of and privy to all conferences [and] any and all discussions with the [Court] and the defendants" (*id.* at 2); that her complaint also serve as "an opposition of motion to dismiss, a motion for emergency relief due to my substantial evidence, of motion of lemine [sic] due to the agencies fraudulent and unconstitutional bad faith actions and documents, a motion for summary judgement motion as well" (*id.*); and "to add another defendant and pertinent crucial evidence to my case without having to amend the complaint" (*id.* at 3). Plaintiff also stated that her impairments and hardships "disallow [her] to act timely and promptly at times." (*Id.*) She also requested that the Court appoint pro bono counsel to represent her in this matter. In its January 17, 2023, order to amend, the Court stated that it would consider Plaintiff's requests for accommodation in due course as the litigation proceeds and noted that, if Plaintiff needed more time to comply with the order to amend, she could submit a request for an extension of time. (*See* ECF 7, at 4-5.) The Court also denied Plaintiff's application for the Court to request pro bono counsel without prejudice to renewal at a later time. (*Id.*)

On February 3, 2023, Plaintiff filed a letter which the Court construed as a request to seal this action and a request to proceed under a pseudonym. (ECF 8.) By order dated February 21, 2023, the Court denied both of Plaintiff's requests without prejudice to renewal at a later time. (ECF 9.) The Court advised Plaintiff that if, during the course of the litigation, she believes that a

specific document or filing may include sensitive information, she may request to file the document under seal.[10]

On April 4, 2023, after she filed the amended complaint, Plaintiff filed another letter requesting "reasonable accommodations" and requesting that the Court include only her initials on the docket. (ECF 14.) Plaintiff also renews her application for the Court to request *pro bono* counsel to represent her in this matter. The letter largely repeats the same arguments and requests made in Plaintiff's prior letters. The Court denies Plaintiff's requests without prejudice to renewal at a later time for the reasons stated in its January 17, 2023, and February 21, 2023, orders. (*See* ECF 7, 9.) As discussed below, however, the Court strongly encourages Plaintiff to consult with the New York Legal Assistance Group's ("NYLAG") clinic for *pro se* litigants.

## LEAVE TO REPLEAD

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Even though Plaintiff has already been granted leave to amend her complaint once, the Court grants her leave to file a second amended

---

[10] The Court also instructed Plaintiff that Rule 5.2(a)(3) of the Federal Rules of Civil Procedure requires that court submissions that refer to the name of a minor child must do so by using only the child's initials, and that if her future submissions include reference to a minor child, she must refer to the child using only the child's initials.

complaint. Specifically, Plaintiff is granted leave to replead only the following claims, as specified above: (1) a procedural due process claim arising from CPS's alleged failure to notify her of its March 2017 decision finding that a report was indicated in the SCR; (2) a Fourth Amendment claim arising from a December 2016 warrant allegedly issued on the basis of false information; and (3) a claim under Title II of the ADA and the Rehabilitation Act arising from CPS's and/or OFCS's allegedly failure to accommodate Plaintiff's disability.

In the "Statement of Claim" section of the second amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's second amended complaint should tell the Court: who violated her federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief. Plaintiff is strongly encouraged to avoid unnecessary repetition of her factual allegations. Plaintiff should also note that the second amended complaint need only include the factual basis of her claims; she does not need to include recitations of legal principles or evidence at this stage of the litigation.

Because Plaintiff's second amended complaint will completely replace, not supplement, the previous complaints, any facts or claims that Plaintiff wants to include from the previous complaints must be repeated in the second amended complaint.

Plaintiff may consider contacting the New York Legal Assistance Group's ("NYLAG") Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this court. The clinic is run by a private organization; it is not part of, or run by, the court. It cannot accept filings on behalf of the court, which must still be made by any *pro se* party through the Pro Se Intake Unit. A copy of the flyer with details of the clinic is attached to this order.

## CONCLUSION

The Court dismisses the amended complaint for failure to state a claim on which relief may be granted and for seeking monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The Court grants Plaintiff 60 days' leave to replead her Section 1983 procedural due process and Fourth Amendment claims, and her ADA and Rehabilitation Act claims in a second amended complaint that complies with the standards set forth above.

If Plaintiff fails to file a second amended complaint within the time allowed, or fails to show cause to excuse such failure, the Court will enter judgment dismissing this action; the judgment will dismiss Plaintiff's claims under federal law for the reasons stated in this order, *see id.*, and will decline to consider, under the Court's supplemental jurisdiction, Plaintiff's claims under state law, *see* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf.*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates

good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   June 12, 2023
         New York, New York

   /s/ Laura Taylor Swain   
LAURA TAYLOR SWAIN
Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____          ___ Civ. _____ (___)

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*          **SECOND**
**AMENDED**

           **-against-**          **COMPLAINT__**

_____          Jury Trial:   ☐ Yes      ☐ No

_____                          *(check one)*

_____

_____

_____

_____

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s).  If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Part I.  Addresses should not be included here.)*

I.      **Parties in this complaint:**

A.      List your name, address and telephone number.  If you are presently in custody, include your identification number and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff      Name _____

                Street Address _____

                County, City _____

                State & Zip Code _____

                Telephone Number _____

B.      List all defendants.  You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual.  Include the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

*Rev. 12/2009*                1

Defendant  No. 1          Name _____

                          Street Address _____

                          County, City _____

                          State & Zip Code _____

                          Telephone Number _____


Defendant  No. 2          Name _____

                          Street Address _____

                          County, City _____

                          State & Zip Code _____

                          Telephone Number _____


Defendant  No. 3          Name _____

                          Street Address _____

                          County, City _____

                          State & Zip Code _____

                          Telephone Number _____


Defendant  No. 4          Name _____

                          Street Address _____

                          County, City _____

                          State & Zip Code _____

                          Telephone Number _____


## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction.  Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.      What is the basis for federal court jurisdiction?  *(check all that apply)*

☐ Federal Questions                    ☐ Diversity of Citizenship

B.      If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____

        _____

        _____

C.      If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

        Plaintiff(s) state(s) of citizenship _____

        Defendant(s) state(s) of citizenship _____

        _____

### III.   Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.      Where did the events giving rise to your claim(s) occur?  _____

_____

B.      What date and approximate time did the events giving rise to your claim(s) occur?  _____

_____
_____

C.      Facts:  _____

_____

| What happened to you? |

_____
_____
_____
_____

| Who did what? |

_____
_____
_____

| Was anyone else involved? |

_____
_____
_____

| Who else saw what happened? |

_____
_____
_____
_____

### IV.   Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.  _____

_____
_____
_____
_____
_____
_____

**V.      Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are

seeking, and the basis for such compensation.  _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20___.

Signature of Plaintiff      _____

Mailing Address             _____

                            _____

                            _____

Telephone Number            _____

Fax Number *(if you have one)*  _____

<u>Note</u>:   All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners must also provide their inmate numbers, present place of confinement, and address.

<u>For Prisoners</u>:

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:     _____

Inmate Number               _____



Since 1990, NYLAG has provided free civil legal services to New Yorkers who cannot afford private attorneys.

# Free Legal Assistance for Self-Represented Civil Litigants in Federal District Court for the Southern District Of New York

The NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York is a free legal clinic staffed by attorneys, law students and paralegals to assist those who are representing themselves or planning to represent themselves in civil lawsuits in the Southern District of New York. The clinic does not provide full representation. The clinic, which is not part of or run by the court, assists litigants with federal civil cases including cases involving civil rights, employment discrimination, labor law, social security benefits, foreclosure and tax.

## To Contact the Clinic:

Call (212) 659-6190 or complete our online intake form (found here: https://tinyurl.com/NYLAG-ProSe-OI). A staff member will contact you within a few business days.

Those looking for assistance can also contact the clinic at the kiosk located across the hall from the pro se clinic office in the courthouse.

**At this time, the clinic offers remote consultations only. Requests for in-person appointments will be reviewed on a case-to-case basis.**

## Location and Hours:

Thurgood Marshall United States Courthouse

Room LL22
40 Foley Square
New York, NY 10007
(212) 659 6190

Open weekdays
10 a.m. – 4 p.m.
Closed on federal and court holidays

Disclaimer: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel, nor does it constitute advertising or a solicitation.

a beneficiary of
